**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

STANLEY BLACK & DECKER, INC. and
BLACK & DECKER (U.S.) INC.,

Plaintiffs,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No. 26-cv-08182

## COMPLAINT

Plaintiffs Stanley Black & Decker, Inc. and Black & Decker (U.S.) Inc. ("Plaintiffs" or "SBD") hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over SBD's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to

the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell products using infringing and counterfeit versions of SBD's federally registered trademarks (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused SBD substantial injury in the state of Illinois.

## II. INTRODUCTION

3. SBD filed this case to prevent e-commerce store operators who trade upon SBD's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate SBD's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and inner workings of their counterfeiting operation. SBD is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. SBD has been, and continues to be, irreparably damaged through consumer confusion because of Defendants' actions and therefore seeks injunctive and monetary relief.

## III. THE PARTIES

4. Plaintiff Stanley Black & Decker, Inc. is a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business located at 1000 Stanley Drive, New Britain, Connecticut, 06053. Stanley Black & Decker, Inc., is the successor-in-interest to The Stanley Works. Stanley Black & Decker, Inc. owns all trademark and trade dress rights related to the CRAFTSMAN® brand name.

5. Plaintiff Black & Decker (U.S.) Inc. is a Maryland corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland 21286. Black & Decker (U.S.) is the exclusive seller and distributor in the United States of CRAFTSMAN products and is the United States licensee, from Stanley Black & Decker, Inc., of all trademark and trade dress rights associated with CRAFTSMAN.

6. SBD manufactures and sells a wide range of CRAFTSMAN tools, batteries, accessories, and clothing. Since 1927, the CRAFTSMAN name has stood for quality and durability. CRAFTSMAN represents a commitment to getting the job done right, and for nearly a century it has been a trusted household name across American homes, garages, and worksites. After purchasing CRAFTSMAN in 2017, SBD revived long-established pride in superior quality with re-engineered products, bringing back historically reliable, high-performance tools and making them more accessible to purchase.

7. SBD continually innovates and refines its CRAFTSMAN products by learning from customers and understanding what works, and what does not, through their customer support team. CRAFTSMAN is widely recognized for its quality, and readers of *Popular Mechanics* named CRAFTSMAN their favorite brand of hand tools in their Reader's Choice Awards. CRAFTSMAN has also won prestigious Edison awards for innovation. In 2022, CRAFTSMAN

was honored with nine Pro Tool Innovation Awards, representing best-in-class products for the construction, landscaping, and trade categories. As the title sponsor of the NASCAR CRAFTSMAN Truck Series and a fixture in homes, garages, and worksites across the country, CRAFTSMAN remains one of America's most recognized and trusted tool brands.

8. SBD markets and sells a variety of CRAFTSMAN branded products, including batteries, power tools, lawn and garden equipment, clothing, and accessories (collectively, "CRAFTSMAN Products"). CRAFTSMAN Products have become enormously popular, driven by SBD's quality standards. Among the purchasing public, CRAFTSMAN Products are instantly recognizable as such. CRAFTSMAN Products are distributed and sold to consumers through various distribution channels including Ace Hardware, Lowe's, and the official CRAFTSMAN online shop, https://www.craftsman.com/. CRAFTSMAN Products are sold only by SBD or through authorized retail channels and are recognized by the public as being exclusively associated with SBD and the CRAFTSMAN brand.

9. SBD has used the CRAFTSMAN trademark, and other trademarks, for many years and has continuously sold products under its trademarks ("CRAFTSMAN Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the CRAFTSMAN Trademarks. SBD's use of the marks has also built substantial goodwill in the CRAFTSMAN Trademarks. The CRAFTSMAN Trademarks are famous marks and valuable assets of SBD. CRAFTSMAN Products typically include at least one of the CRAFTSMAN Trademarks.

10. The CRAFTSMAN Trademarks are registered with the United States Patent and Trademark Office and are included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 1,389,958 | CRAFTSMAN | Apr. 15, 1986 | For: All-purpose wire cleaning and scraping brushes in Class 021. |
| 1,388,833 | CRAFTSMAN | Apr. 08, 1986 | For: Lawn spreaders and compressed air sprayer in Class 007. |
| 1,388,982 | CRAFTSMAN | Apr. 08, 1986 | For: Lawn and garden spray units to be connected to a water supply in Class 011. |
| 1,397,661 | CRAFTSMAN | Jun. 17, 1986 | For: Air hose for pneumatic tools in Class 017. |
| 1,418,186 | CRAFTSMAN | Nov. 25, 1986 | For: Pin punches, brake adjusting tools, carpenter's clamps, c-clamps, and c-clamp sets, and clamps in the nature of hand tools in Class 008. |
| 1,400,931 | CRAFTSMAN | Jul. 15, 1986 | For: Lawn vacuums with shredding and bagging capacity, lawn sweepers, lawn vacuums, and snow throwers in Class 007. |
| 1,440,446 | CRAFTSMAN | May 26, 1987 | For: Riding lawn mowers and riding mower grass catchers in Class 007.<br><br>For: Garden tractors and sleeve hitch attachments for garden tractors, garden cartsk, wheelbarrows and hand trucks in Class 012. |
| 1,410,237 | CRAFTSMAN | Sep. 23, 1986 | For: Electric wet-dry vacuums in Class 009. |
| 1,409,457 | CRAFTSMAN | Sep. 16, 1986 | For: Tool chests, dividers for tool chests; rollaway tool cabinets; side shelves for rollaways, professional work |

| | | | |
|---|---|---|---|
| | | | chests, tool caddies, including mobile type; portable tool cabinets with or without wheels; sliding work surfaces; sliding trays, 2-drawer add-on sets, security drawers, 9" drawers for rollaways, cantilever trays, side boxes for work chests, socket organizers, socket trays for use as parts of tool cabinets; parts trays, drawer dividers, drawer liners, mats for tool cabinets and tool chests, all plastic in Class 020. |
| 1,413,049 | CRAFTSMAN | Oct. 14, 1986 | For: Power-operated tools, and parts and accessories therefor, namely, hammer drills, impact wrenches, planers, shears, cutter blades, impact chuck and bit sets, chucks, edge guides, tool post holders; sanders accessories, namely, sanding platen assemblies, sanding pads, sanding discs, commercial wax removing bonnets, buffing bonnets, polishing heads; air tools and accessories, namely, orbital sanders, rotary sanders, straight line sanders, rotary/orbital sanders; die grinders, die grinder kits, holders for rotary grinders, cutters, discs for cutters, short barrel hammers, long barrel hammers, drills, electronic drills, routers, scrollers; electric generators; and tillers |

| | | | |
|---|---|---|---|
| | | | in Class 007. |
| 1,418,956 | CRAFTSMAN | Dec. 02, 1986 | For: Lawn dethatchers in Class 007. |
| 1,546,082 | CRAFTSMAN | Jul. 04, 1989 | For: Agricultural and earth working implements for use with lawn mowers or tractors, namely, rollers, aerators, plows, plow blades, harrow blades, grader blades, snow blades, and cultivators in Class 007. |
| 1,707,786 | CRAFTSMAN | Aug. 18, 1992 | For: Lawn and garden equipment; namely, power blowers in Class 007. |
| 1,707,787 | CRAFTSMAN | Aug. 18, 1992 | For: Gasoline-powered and electric chipper-shredders in Class 007. |
| 1,702,866 | CRAFTSMAN | Jul. 28, 1992 | For: Lawn and garden equipment; namely, power edgers, trimmers and edger-trimmers in Class 007. |
| 1,702,867 | CRAFTSMAN | Jul. 28, 1992 | For: Lawn and garden equipment; namely, power cultivators in Class 007. |
| 1,702,871 | CRAFTSMAN | Jul. 28, 1992 | For: Chain saws in Class 007. |
| 1,702,873 | CRAFTSMAN | Jul. 28, 1992 | For: Lawn and garden equipment; namely, power sprayer washers. |
| 1,781,282 | CRAFTSMAN | Jul. 13, 1993 | For: Electric lighting products; namely, worklights in Class 011. |
| 1,824,278 | CRAFTSMAN | Mar, 01, 1994 | For: Electrical cord reels and electrical surge arresters in Class 009. |
| 1,927,755 | CRAFTSMAN | Oct. 17, 1995 | For: Clothing, namely gloves in Class 025. |

| | | | |
|---|---|---|---|
| 2,087,020 | CRAFTSMAN | Aug. 12, 1997 | For: Hand tools, namely, spring clamps, stud fingers, and bar clamps in Class 008.<br><br>For: Carpenter pencils in Class 016. |
| 2,564,043 | CRAFTSMAN | Apr. 23, 2002 | For: Electronic acoustic signal level measuring tool in Class 009. |
| 2,569,359 | CRAFTSMAN | May 14, 2002 | For: Electronic measuring devices, namely, multimeters, battery testers, ammeters, digital thermometers not for medical purposes, and compact and pocket sized multitesters in Class 009. |
| 2,760,368 | CRAFTSMAN | Sep. 02, 2003 | For: Toys, namely, toy hand tools, toy power tools, toy tool storage units, toy work benches, toy flashlights, multiple activity toys, electronically operated toy motor vehicles and toy wagons in Class 028. |
| 2,941,737 | CRAFTSMAN | Apr. 19, 2005 | For: Battery-operated flashlights; electric lighting products; namely, worklights in Class 011. |
| 2,936,154 | CRAFTSMAN | Mar. 29, 2005 | For: Full line of power tools and attachments therefore for home, workshop, yard, automotive and industrial use; a full line of gasoline and electric powered lawn and garden tools for home and commercial use; jacks, namely, hydraulic jacks; lawn and garden equipment, namely, power sprayer washers, power cultivators, |

| | | | |
|---|---|---|---|
| | | | power edgers, power trimmers and edger-trimmers, power blowers; chain saws; gasoline-powered and electric chipper-shredders; sump pumps; well pumps; agricultural and earth working implements for use with lawn mowers or tractors, namely, rollers, aerators, plows, plow blades, harrow blades, grader blades, snow blades, dozer blades, cultivators and furrow openers; power-operated lawn dethatchers; power-operated tools, namely, hammer drills, impact wrenches, planers, shears, nibblers, cutter blades, rip guides, nibbler heads, impact chuck and bit sets, chucks, edge guides, blade holders, tool post holders, and replacement parts therefore; accessories for power sanders, namely, sanding plate assemblies, sanding pads, sanding discs, sanding guards, commercial wax removing bonnets, buffing bonnets, polishing heads; air tools and accessories, namely, orbital sanders, rotary sanders, straight line sanders, rotary/orbital sanders; power-operated die grinders, power-operated die grinder kits comprised of carbide bits, abrasive discs, grinding motor, collets and storage case, holders for power- |

| | | | |
|---|---|---|---|
| | | | operated rotary grinders, power operated cutters, discs for power-operated cutters, short barrel power-operated hammers, long barrel power-operated hammers, power drills; electronic drills, routers and scrollers; electric generators; tillers, namely, power-operated garden tillers; riding lawn mowers, namely, rear engine riding lawn mowers; riding mower grass catchers, mowing decks and wheels for lawn mowers; lawn vacuums with shredding and bagging capacity, power-operated lawn sweepers, lawn vacuums, snow throwers; lawn mower accessories, namely, replacement blades, replacement wheels, air filters, tune-up kits comprised of spark plugs, air filter and oil, grass catchers, clipping deflectors, lathes, power-operated wood shapers, power-operated planers, power-operated jointers, power-operated combination jointer-planer, power-operated combination jointer-planer-molder, and power-operated combination planer-molder; lawn spreaders, namely, mechanical spreaders for seed, dry lawn chemicals, sand and chemical preparations for melting snow and ice, compressed air |

| | | | |
|---|---|---|---|
| | | | spreader; gas-powered garden tillers; air compressors/sprayers; accessories for air compressors, namely, air-operated paint guns; airless paint sprayer guns; generators, namely, electric generators in Class 007. |
| 2,957,029 | CRAFTSMAN | May 31, 2005 | For: Full line of manually operated tools and attachments therefore for home, workshop, yard, automotive and industrial use; hand tools, namely, lug wrenches, spring clamps, stud finders, and carpenter's squares, tool holsters, tool holders, pin punches, brake adjusting tools, carpenter's clamps, clamps in the nature of hand tools, utility knives and blades, steel cradle hammer/hatchet holders, sledges, wedges, nail pullers and bars, lopping shears, punches, tin snips, shaping planes, shaping files, round shaping files, tap and die sets, and tote shovels; and mechanics' hand tools, namely, socket wrenches and sockets, ratchet wrenches, spinner handles for socket wrenches, extension bars, combination wrenches, ignition wrenches, hex keys wrenches, hacksaws, and manual electrical crimping tools in Class 008. |

| | | | |
|---|---|---|---|
| 2,951,463 | CRAFTSMAN | May 17, 2005 | For: Electric measuring devices, namely, multimeters, battery testers, ammeters, digital thermometers not for medical purposes, and benchtop, compact and pocket sized multitesters; replacement blades for tape measures; tape measures, tape measure holders, protective knee pads; electrical cord reels and electrical surge arresters; electric garage door openers; batteries and battery chargers; and safety glasses in Class 009. |
| 2,895,793 | CRAFTSMAN | Oct. 19, 2004 | For: Carts, tractor cabs, and wheel weights for enhancing the stability and traction of tractor wheels; lawn tractors, namely, rear engine lawn tractors, garden tractors and sleeve hitch attachments for garden tractors; garden carts, wheelbarrows and hand trucks in Class 012. |
| 2,913,074 | CRAFTSMAN | Dec. 21, 2004 | For: Tool bags, tool pouches, and nail/tool bags, all sold empty in Class 018. |
| 2,913,075 | CRAFTSMAN | Dec. 21, 2004 | For: Tool chests; dividers for tool chests; rollaway tool cabinets; side shelves for rollaway tool cabinet; tool caddies, namely, non-metal tool boxes, including mobile type; portable tool cabinets with or without wheels; sliding work surfaces for tool cabinets and tool chests; sliding trays for tool cabinets |

| | | | |
|---|---|---|---|
| | | | and tool chests, drawer add-on sets, namely, drawers and dividers therefor; security drawers, drawers for rollaways, cantilever trays for tool cabinets and tool chests; socket organizers and socket trays for use as parts of tool cabinets; parts trays for tool cabinets and tool chests; drawer dividers, plastic mat inserts for tool cabinets and tool chests; and work benches in Class 020. |
| 3,128,951 | CRAFTSMAN | Aug. 15, 2006 | For: Clothing, namely, overalls, work shirts, coveralls, jeans, workpants, coats, jackets, vests, t-shirts, fleece tops and woven shirts, and footwear in Class 025. |
| 4,058,681 | CRAFTSMAN | Nov. 22, 2011 | For: Manually operated metal garden hose valves in Class 006.<br><br>For: Sprayer nozzles for garden hoses in Class 021. |
| 4,203,435 | CRAFTSMAN | Sep. 04, 2012 | For: Apparel, namely, tops, bottoms, shirts, sweaters, sweatshirts, pants, jeans, shorts, jackets, and headwear in Class 025. |
| 565,462 | CRAFTSMAN | Oct. 21, 1952 | For: Tool boxes, tool chests, drill cases all sold empty in the trade in Class 002. |
| 551,491 | CRAFTSMAN | Dec. 04 1951 | For: Levels, miter boxes, square, tape lines, rules, thickness gauges, dividers, feeler gauges, wire gauges, thread gauges, and magnifiers in Class 026. |

| | | | |
|---|---|---|---|
| 576,891 | CRAFTSMAN | Jul. 07, 1953 | For: Electric goods-, namely, motors, electrical hand manipulable portable drills and saws; portable hand sanders and polishers; soldering irons; portable hand grinders; arc welders and accessories in Class 021. |
| 2,363,819 | CRAFTSMAN CLUB | Jul. 04, 2000 | For: Buying clubs featuring contests and newsletters that feature information on tools in Class 035. |

11. The U.S. registrations for the CRAFTSMAN Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CRAFTSMAN Trademarks constitute *prima facie* evidence of their validity and of SBD's exclusive right to use the CRAFTSMAN Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the CRAFTSMAN Trademarks are attached hereto as **Exhibit 1**.

12. The CRAFTSMAN Trademarks are exclusive to SBD and are displayed extensively on CRAFTSMAN Products and in marketing and promotional materials. The CRAFTSMAN Trademarks are also distinctive when applied to CRAFTSMAN Products, signifying to the purchaser that the products come from SBD and are manufactured to SBD's quality standards. Whether SBD manufactures the products itself or contracts with others to do so, SBD has ensured that products bearing the CRAFTSMAN Trademarks are manufactured to the highest quality standards.

13. The CRAFTSMAN Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of CRAFTSMAN Products have enabled the CRAFTSMAN brand to achieve

widespread recognition and fame and have made the CRAFTSMAN Trademarks some of the most well-known marks in the American tool and hardware industry. The widespread fame, outstanding reputation, and significant goodwill associated with the CRAFTSMAN brand have made the CRAFTSMAN Trademarks valuable assets of SBD.

14. SBD has expended substantial time, money, and other resources advertising, promoting, and marketing the CRAFTSMAN Trademarks. In fact, SBD has expended millions of dollars in advertising, promoting, and marketing featuring the CRAFTSMAN Trademarks. CRAFTSMAN Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the CRAFTSMAN Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from SBD. CRAFTSMAN Products have become among the most popular of their kind in the U.S. The CRAFTSMAN Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the CRAFTSMAN Trademarks is of immeasurable value to SBD.

15. Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to SBD. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually

impossible for SBD to learn Defendants' true identities and the exact inner workings of their counterfeit network. If Defendants provide additional credible information regarding their identities, SBD will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the CRAFTSMAN brand has resulted in significant counterfeiting of the CRAFTSMAN Trademarks. Because of this, SBD has implemented a brand protection program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, SBD has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), Roadget Business PTE. Ltd. ("SHEIN"), Whaleco, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 2**).

18. Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States

economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

19. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with [] e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–87. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Illinois.

21. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Amazon Pay, Payoneer, PayPal, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. SBD has not licensed or authorized Defendants to use the CRAFTSMAN Trademarks, and none of the Defendants are authorized retailers of CRAFTSMAN Products.

22. Many Defendants also deceive unknowing consumers by using the CRAFTSMAN Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to CRAFTSMAN Products. Other e-commerce stores operating under the Seller Aliases omit using the CRAFTSMAN Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for CRAFTSMAN Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and inner workings of their counterfeiting operation, and to avoid being shut down.

25. Defendants are collectively causing harm to SBD's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to SBD in a way that individual actions, occurring alone, might not.

26. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as SBD, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of SBD's enforcement efforts.

E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to SBD.

28. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from SBD have knowingly and willfully used, and continue to use, the CRAFTSMAN Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the CRAFTSMAN Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming SBD.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. SBD hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the CRAFTSMAN Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CRAFTSMAN Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products offered, sold, or marketed under the CRAFTSMAN Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CRAFTSMAN Trademarks without SBD's permission.

33. SBD owns the CRAFTSMAN Trademarks. SBD's United States registrations for the CRAFTSMAN Trademarks are in full force and effect. On information and belief, Defendants have knowledge of SBD's rights in the CRAFTSMAN Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the CRAFTSMAN Trademarks. Defendants' willful, intentional, and unauthorized use of the CRAFTSMAN Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. SBD has no adequate remedy at law and if Defendants' actions are not enjoined, SBD will continue to suffer irreparable harm to its reputation and the goodwill of the CRAFTSMAN Trademarks.

36. The injuries and damages sustained by SBD have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

37. SBD hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the

general public as to the affiliation, connection, or association with SBD or the origin, sponsorship, or approval of Defendants' Unauthorized Products by SBD.

39. By using the CRAFTSMAN Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. SBD has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the CRAFTSMAN brand if Defendants' actions are not enjoined.

**PRAYER FOR RELIEF**

WHEREFORE, SBD prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the CRAFTSMAN Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a CRAFTSMAN Product or is not authorized by SBD to be sold in connection with the CRAFTSMAN Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a CRAFTSMAN Product or any other product produced by SBD, that is not SBD's

or not produced under the authorization, control, or supervision of SBD and approved by SBD for sale under the CRAFTSMAN Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of SBD, or are sponsored by, approved by, or otherwise connected with SBD;

d. further infringing the CRAFTSMAN Trademarks and damaging SBD's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for SBD, nor authorized by SBD to be sold or offered for sale, and which bear any of the CRAFTSMAN Trademarks;

2) Entry of an Order that, upon SBD's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including Amazon, eBay, SHEIN, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CRAFTSMAN Trademarks;

3) That Defendants account for and pay to SBD all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CRAFTSMAN Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that SBD be awarded statutory damages, for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), of $2,000,000 for each and every use of the CRAFTSMAN Trademarks;

5) That SBD be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 10th day of July 2026.

Respectfully submitted,

/s/ Martin F. Trainor

Martin F. Trainor
Alexander Whang
Victor B. Chahin
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
alexander@tme-law.com
victor@tme-law.com

*Counsel for Plaintiffs Stanley Black & Decker, Inc. and Black & Decker (U.S.) Inc.*